## Foster v. Erie Insurance Exchange

*Joseph Malizia,* for plaintiff.
*Vernon D. Roof,* for defendant.

DAGHIR, *P.J.,* January 5, 1989—

## FACTS

On September 14, 1984, plaintiff's decedent was killed while working in an excavation ditch for the St. Marys Water Authority on the berm of Legislative Route 120, a public, state highway.

A backhoe (excavation/ditch-digging apparatus) was in use at the time when the walls of the excavation collapsed, killing decedent who, at the time, had a valid effective contract of no-fault motor vehicle insurance with defendant. (40 P.S. §1009.101, et seq.—now repealed, hereinafter designated as the "No-fault Act" or the "act".) Decedent, at the time of the collapse, was in the excavation laying line and was close to the backhoe.

Plaintiff claims funeral benefits of $1500, work loss benefits of $15,000, and survivor's loss of

$5000, under and in accordance with the no-fault insurance policy terms against which defendant has filed these present summary judgment proceedings which are now before the court.

The excavator was capable of highway use and was required to be and was registered under the Pennsylvania Vehicle Code.

## DISCUSSION

From the motion, arguments, pleadings, depositions, interrogatories, and answers thereto, the briefs of the parties, the issues, all of which are disposed herein, are:

(I) Is plaintiff's survivor's claim barred by the statute of limitations as set forth in the act?

(II) Is the excavating equipment a vehicle and a motor vehicle as defined by the act and applicable law?

(III) If so, was the excavator being used as a vehicle?

(IV) Is liability otherwise imposed under the referenced policy of insurance under the No-fault Act?

Each will be disposed as presented; however, and firstly, while defendant has raised a question of non-liability because of the legal operation and effect of the Pennsylvania Workmen's Compensation Law, defendant has not seriously argued this nor even discussed it in brief and consequently, this issue is not addressed herein, there being no need to do so because of the other rulings stated in this opinion.

## I

*Partial Summary Judgment—Survivor's Claim—*
*Statute of Limitations*

This must be granted. The act provides, 40 P.S.1009.106, in pertinent part, that an action for

survivor's benefits must be brought within one year after death. Death occurred September 14, 1984, the action was filed September 10, 1986, almost two years thereafter.

Plaintiff did not address this question at argument or in brief, or otherwise, and there is thus no genuine issue of fact outstanding on this issue.

Partial summary judgment on issue of survivor's benefits is granted.

## II

### *Is the Excavator a Vehicle or a Motor Vehicle?*

The act, for recovery, requires injury to arise out of the maintenance or use of a motor vehicle, §1009.301. Section 103 defines a motor vehicle to be a vehicle of a kind required to be registered under the Pennsylvania Vehicle Code and both parties agree this ditch-digging apparatus was so required and it could be and was lawfully operated on a public highway.

The Vehicle Code, 75 Pa.C.S. §102, defines vehicle, in pertinent part, as every device in, upon, or by which any person or property is or may be transported upon a highway. The same section of the Vehicle Code also defines, in pertinent part, a motor vehicle as a vehicle that is self-propelled. Interrogatories reveal that the excavator's primary use is excavating and that its use on the highway is only incidental. Defendant's argument that this excavator is not a motor vehicle within the policy terms is denied. There is nothing in either the Vehicle Code or the act which defines or restricts the definitions as defendant argues.

Nor do we accept the federal district court's ruling in the case of *Bertles v. Guest,* 477 F.Supp.

179 (1979), which held a ditch-digging apparatus of the type in that case not to be a vehicle, as applicable here. In *Bertles,* the 235 Caterpillar apparatus was on tracks. It could neither be registered or driven on the highway.

Additionally, and perhaps contrary to *Bertles, supra,* simply because a ditch-digging apparatus fits within the description of special mobile equipment, 75 Pa.C.S., § 102, it therefore cannot also be either a "vehicle" or a "motor vehicle" within the definition of both the Vehicle Code and the act is not so determined. We do not believe *Bertles, supra,* so holds. Rather, we believe that an apparatus within the special mobile equipment definition can be, and in most cases, if not all, is, *also,* both a vehicle and a motor vehicle. A vehicle/motor vehicle, under the Vehicle Code, that is also "special mobile equipment" under the code, simply has further additional requirements and/or regulations as set forth in the code because it is special mobile equipment, in addition to being a vehicle and a motor vehicle. Nowhere does the definition of either "vehicle" or "motor vehicle" expressly include or exclude "special mobile equipment," within the terms of either.

To hold that "special equipment vehicle" is exclusionary to "vehicle" or "motor vehicle" as defendant argues, would mean that a "special mobile equipment" apparatus that also meets the definition of "vehicle" and/or "motor vehicle" under the Vehicle Code and the No-fault Act would escape the liability provisions of the No-fault Act. Such cannot be the law in Pennsylvania, at least until so determined by a judicial body of a level higher than this court, regardless of whether such vehicle's use on the highway is primary or incidental.

There is no justiciable issue on the question of whether the excavator involved herein was a vehicle or a motor vehicle. Defendant's position that the excavator was not either a vehicle or a motor vehicle is denied. It was both at the time of the unfortunate accident giving rise to this suit.

## III

### Was the Excavator Being Used as a Motor Vehicle?

The act, for liability, section 1009.301(a), requires injury (or death) arising out of "maintenance or use of a motor vehicle." This phrase, in pertinent part, in section 1009.103, means maintenance or use of a vehicle *as a vehicle.* (emphasis supplied)

This motor vehicle/excavator was in use at the time of injury, on, it is assumed for purposes of this argument, the right-of-way (berm) of a public highway. It was being used for excavating purposes, an operator was on it transporting it and the operator along the line to be excavated when the wall of the line being dug collapsed, killing defendant who fits the definition of pedestrian within the policy, but without any actual contact of the excavator and the decedent (which lack of contact we do not believe to be determining).

From all of this we conclude that there is no genuine issue of fact making trial necessary and we conclude as a matter of law that the backhoe/excavator was not being used at the time of this injury as a vehicle within the spirit or meaning of the act, and consequently defendant's motion for summary judgment must be and is granted, both plaintiff's "but for" argument and argument of primary use of excavator being "highway operation"

and also "excavation" not being determinative even if applicable and even though being decided favorably to plaintiff.

The no-fault coverage required by the act governing no-fault insurance applies for use of motor vehicle qua motor vehicle, not use of equipment built into vehicle to serve some other function. *Crusco v. Insurance Company of North America,* 292 Pa. Super. 293, 437 A.2d 52 (1981).

*Thornton v. United States Fidelity and Guaranty Co.,* 340 Pa. Super. 126, 489 A.2d 873 (1985) requires for recovery that a vehicle at the time of the accident be operated *in a typical* fashion for transportation of persons.

In short, we conclude that the accident resulting in injuries causing death to Lionel G. Foster, decedent, did not result from the use of a vehicle as a transportation device within the meaning of the Vehicle Code and hence, also the No-fault Act. *Quinn v. By-Pass Garage Inc.,* 36 D.&C. 3d 290 (1984), affd. 334 Pa. Super. 412, 482 A.2d 634.

Instantly, the backhoe was not being utilized as a means of transportation as contemplated under the policy of insurance and the provisions of the No-fault Act at the time of decedent's death.

"It seems reasonable to assert that our legislature did not have in mind that every conceivable injury arising from the use of any conceivable self-propelled vehicle where the accident might occur anywhere in the commonwealth would result in no-fault benefits under the act." *Bills v. Nationwide Mutual Insurance Co.,* 317 Pa. Super. 188, 463 A.2d 1148 (1983).

We find no genuine issue of material fact exists as to whether the death of decedent resulted from the use of a motor vehicle *as a motor vehicle.*

In *Camacho v. Nationwide Insurance Company,* 314 Pa. Super. 21, 460 A.2d 353 (1983), the following appears:

"It is clear that this was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but is intended to cover motor vehicle accidents. The economics of the act are completely destroyed by any other interpretation."

Finally, in *Campbell v. Allstate Insurance Company,* 24 D.&C. 3d 728 (1982), the following appears, with which we agree:

"[T]he No-fault Act is aimed at protecting those persons who are using motor vehicles for the purpose of transportation and not for other uses. Plaintiff's activity was simply not within the parameters of the No-fault Act."

## IV

### Liability Under the Policy

It is to be noted that the policy in effect, as stated in plaintiff's brief, provides liability for personal injury protection benefits for injury to anyone protected under the policy that is due to an accident that results from the use of a motor vehicle as a vehicle, and provides further that protection exists when one is hit as a pedestrian by a motor vehicle.

While it is true that an insurance company may provide liability exposure beyond the mandatory statutory minimums, we do not believe that this defendant did so in the applicable policy in effect at the time of this accident resulting in death.

Even though coverage is provided when one is hit as a pedestrian by a motor vehicle, and it conceivably can be argued that this decedent was a pedes-

trian, we nonetheless conclude herein, also, that the injury (death) must be due, under the terms of the policy, from an accident that resulted from the use of a motor vehicle as a vehicle and we believe that under the same reasoning set forth in III above, the accident in this case did not come from such a motor vehicle use.

## ORDER

And now, January 5, 1989, on defendant's motion for summary judgment, after consideration of argument held thereon, briefs submitted, the pleadings, depositions and interrogatories, and consideration of applicable authorities, defendant's motion for summary judgment is granted, there being no genuine issue of material fact existing, both as to plaintiff's claim for survivor's benefits (partial summary judgment) and plaintiff's claim for liability due to injuries occurring as the result of an accident resulting from use of a motor vehicle as a motor vehicle.

Defendant's motion for summary judgment are sustained on both counts and summary judgment is accordingly entered in favor of defendant and against plaintiff.

Costs are assessed against plaintiff.